UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN BIGOLIN,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | EDCV 16-1303 AGR<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on June 20, 2016. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 7, 10.) On April 27, 2017, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for reconsideration of whether Bigolin (1) requires a sit/stand option; and (2) is capable of performing occasional postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling.

# I.

# PROCEDURAL BACKGROUND

On May 28, 2013, Bigolin filed an application for disability insurance benefits and alleged an onset date of March 25, 2013. Administrative Record ("AR") 11. The application was denied initially and on reconsideration. AR 11, 60, 73. Bigolin requested a hearing before an Administrative Law Judge ("ALJ"). On December 12, 2014, the ALJ conducted a hearing at which Bigolin and a vocational expert testified. AR 27-47. On January 30, 2015, the ALJ issued a decision denying benefits. AR 8-23. On April 25, 2016, the Appeals Council denied the request for review. AR 1-3. This action followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.

# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Bigolin met the insured status requirements through December 31, 2017. AR 13. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Bigolin had the severe impairments of post-traumatic osteoarthritis of the left knee, status post 12 knee surgeries; internal derangement of the left knee post arthroscopic surgery; lumbar musculoligamentous strain with lumbar radiculopathy; iliotibial band friction syndrome; migraines; insomnia; bilateral knee pain with tingling of left knee to toes; and intermittent asthma. AR 13.

The ALJ found that Bigolin had the residual functional capacity ("RFC") to perform sedentary work except that she cannot push or pull with the left lower extremity; she can occasionally perform postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling but cannot climb ladders, ropes or scaffolds; and she must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

and gases, and hazards such as machinery and heights. AR 16. She is unable to perform past relevant work but there are jobs that exist in significant numbers in the national economy that she can perform, such as addressor, telephone quotation clerk and document preparer. AR 20-22.

### C. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ found Bigolin to be "partially credible because she has some limitations, but not to the extent she has alleged." AR 17. Bigolin testified that she had been using a wheelchair for two years. AR 17, 32. The ALJ reasonably concluded that Bigolin's testimony was inconsistent with her statements that she could not sit for more than 15

minutes, drive for more than 20 minutes, stand for more than 15 minutes or walk for more than 15 minutes. AR 17, 31. Moreover, the ALJ reasonably concluded that Bigolin's testimony was inconsistent with her medical records, which do not contain a prescription for a wheelchair. As the ALJ noted, the medical records indicate generally that she is ambulatory with normal gait, muscle tone and strength, and normal straight leg raise. AR 809, 845, 899.

Bigolin injured her left knee while playing rugby in college and subsequently underwent 12 surgeries over the years. AR 16, 34-35, 306. As a person in her 30s, Bigolin was not a candidate for knee replacement.[2] AR 16, 36-37.

Bigolin last worked in May 2013 at Sears. AR 32. On May 24, 2013, she reported to her doctor that if she stands at work for a full shift, she is in pain for 2-3 days and incapacitated afterwards. Her work involves lifting, standing and walking all day. She requested desk positions but had been turned down.[3] AR 240. Bigolin was advised to exercise but to "[a]void exercises that include squatting or kneeling. They

---

[2] According to the records, knee replacement is not indicated for a young person. The replacement does not last 20 years because a young person will often go back to sports. A redo is difficult and guaranteed to be needed if a young person undergoes knee replacement. AR 571, 966.

[3] Bigolin had consistently complained of knee pain when on her feet all day at work. AR 334. In June 2012, her doctor discussed "likely need to consider career change to a job that does not require prolonged weight bearing." AR 333. In September 2012, Bigolin reported that she pulled her back due to physical labor. AR 329. In November 2012, Bigolin had tenderness, pain, spasm and decreased range of motion in her back. AR 325. On January 3, 2013, Bigolin did not complain of back pain. She experienced left wrist pain but admitted she was not resting her left wrist due to overtime during the holiday season. Both knees were hurting. AR 313. On March 26, 2013, Bigolin underwent left knee debridement and removal of a loose body. AR 297. She requested a brace to protect her knee postop from large dogs at home but it is unclear whether she received it. AR 295. On April 1, 2013, her wrist had improved. Her back was as usual but she was in more pain since the knee surgery because she could not get into a correct sleeping position. AR 289. On April 9, 2013, Bigolin's sutures were removed. AR 283. She was advised to avoid running, jumping, deep squats, heavy lifting or sitting with knees bent 90° for prolonged periods. AR 284.

can put a lot of strain on your knees."  Also, "[d]o not sit for long periods of time.  Try to walk once in a while to keep your knee from getting stiff."  "Use a device to help you do everyday activities," such as cane or walking stick.  AR 247.

On June 17, 2013, Bigolin reported to her doctor that her workplace was not able to accommodate her restrictions.  She is either not qualified or overqualified for work that could accommodate her work restrictions.  She cannot work in her usual employment due to pain in her knee and back.  AR 473.  As of July 24, 2013, Bigolin's knee was still very bad and limited her activities.  Her father gave her a scooter for distances and she used a crutch sometimes for shorter distances.  AR 481.

On October 1, 2013, Bigolin reported that being off work had helped because she was not lifting.  Back pain came back after her last injection but was not as bad as in the past.  AR 527.  Her left knee had decreased range of motion, abnormal alignment and no tenderness.  She was given a knee injection.  AR 528-29.  On October 24, 2013, Bigolin reported being able to walk limited distances at a time, and her pain is worse with stairs.  She does not do physical therapy or excercises on her own.  AR 541.  Bigolin's left knee had tenderness with normal range of motion.  AR 542.  The doctor recommended continuing conservative treatment with assist devices and physical therapy for strengthening.  AR 543.  On November 4, 2013, Bigolin reported that her left knee was slightly better but she still had limited mobility and pain.  AR 560.  Her right knee had full rnage of motion with no swelling or tenderness.  AR 562.

On January 3, 2014, Bigolin reported trying to put together a workbench and being out three days with pain.  Her back was worse and she could not sit for more than five minutes without pain shooting down her left leg.  AR 586.  A week later, on January 10, 2014, Bigolin had a back injection.  AR 608.  The next day, Bigolin went to the emergency room with severe left sacroiliac joint pain radiating to her left foot and positive straight leg raise on her left.  AR 632, 635-36.  After treatment, Bigolin was discharged with pain at 1/10.  The assessment was that Bigolin experienced a flare-up

of symptoms likely due to irritation of the primary pain generator.  AR 637, 659.  On January 20, 2014, Bigolin had significant tenderness in her left knee with positive Apley's sign and positive anterior instability sign.  AR 503.  On January 30, 2014, Bigolin was back to her baseline back pain before the injection.  AR 685.  In February 2014, Bigolin still had tenderness, pain and spasm in her lumbar region with tingling in her left leg and an abnormal straight leg raise on her left.  AR 733.  Bigolin was advised to walk as tolerated, not to repetitively bend or twist when holding objects and not to stay in one position for long periods of time.  AR 735.  On March 3, 2014, Bigolin had a plasma injection in her left knee.  AR 497.  By March 21, 2014, Bigolin had a normal gait, normal muscle tone and normal straight leg raise.  AR 845.  On March 26, 2014, Bigolin reported pain of 5/10 and had another back injection.  She was ambulatory, able to support herself with shallow knee bends and had normal straight leg raise bilaterally.  AR 899.  Dr. Gavrilyuk recommended that Sears extend her leave to May 27, 2014 so that she could have two more plasma injections in her left knee.  AR 506.  On May 6, 2014, Bigolin reported that the back injection worked for a few weeks but was starting to wear out.  Her knee hurts no matter what.  AR 950.

The ALJ agreed that Bigolin could not perform any of her past relevant work and thoroughly reviewed the medical evidence.  AR 20-21.  The ALJ found that the objective medical evidence limited Bigolin to sedentary work with further postural limitations.[4]  AR 18-19.  Moreover, the representative jobs identified by the ALJ, based on the vocational expert's testimony, do not involve activities – such putting together furniture or drilling in a wall – that had triggered previous flare-ups.  AR 14, 336, 586.  An ALJ may consider a claimant's attempts to obtain work after the alleged onset date to discount credibility.  *E.g., Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming credibility finding based in part on claimant continuing to seek employment).  The ALJ did not err.

---

[4] Bigolin reported that she enjoys watching TV, playing video games and texting or talking on the phone with family or friends.  AR 161.

7

### D. Residual Functional Capacity

Bigolin contends the ALJ erred in assessing her residual functional capacity.[5]

The RFC measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471 (1986). The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e). The ALJ's RFC assessment must be supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

The ALJ's RFC assessment is not supported by substantial evidence in two respects. First, the ALJ's finding that Bigolin is capable of occasional postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling is not supported by substantial evidence. Occasional activity is defined as up to 1/3 of the workday, or up to 2.66 hours per workday. As discussed above, a patient with Bigolin's knee condition is advised to "[a]void exercises that include squatting or kneeling." AR 247; *see also* AR 311; AR 362 (Bigolin could not squat at orthopedic examination). The ALJ cites the opinions of the state agency review physicians. AR 20, 53, 56, 69-70. However, the state agency review physicians do not explain this portion of their opinions. AR 53, 56, 69-70. "'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis omitted). Second, the ALJ failed to include a sit/stand option. The treating records indicate Bigolin should avoid staying in the same position for prolonged periods of time. AR 247, 735. There appears to be no contrary opinion in the record.

---

[5] BIgolin also argues that the ALJ improperly analyzed the medical evidence. Because the two arguments overlap, the court need not separately analyze the ALJ's treatment of the medical evidence.

It is unknown on this record whether these two errors are harmless because no inquiry was made of the vocational expert as to whether a sit/stand option is compatible with the representative jobs identified, and whether the representative jobs require more than incidental or minimal postural activities. For this reason, the matter is remanded for further proceedings consistent with this opinion.

Bigolin's remaining arguments are rejected. The ALJ thoroughly reviewed the medical records. Bigolin argues that the RFC failed to take into account her depression, anxiety, wrist impairment, urinary frequency and headaches. Contrary to the implicit assumption of Bigolin's argument, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). "'A claimant bears the burden of proving that an impairment is disabling.'" *Id.* (citation omitted).

The ALJ correctly observed that Bigolin's complaints of depression or anxiety in the medical records were sporadic. AR 14, 240, 415, 587. The treating records generally indicated no psychiatric symptoms. AR 242, 272, 475, 483, 502, 528, 562, 634, 687, 952, 1000, 1049, 1066, 1107. The examining physician assessed only mild limitations even in performing detailed and complex tasks, and assessed a Global Assessment of Functioning ("GAF") score of 62.[6] AR 14, 369; *see also* AR 415 (memory and judgment normal). The ALJ concluded that Bigolin had mild limitations in activities of daily living and concentration, persistece and pace, and no limitations in social functioning. AR 15.

Bigolin's urinary frequency is a long standing ailment that she had while working full time. AR 269. The treating records are negative for incontinence, and there is no indication that she has had any functional restrictions due to urinary frequency.

---

[6] A GAF score of 62 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev.).

Bigolin points out that she complained of headaches in her disability report. AR 145. However, her treating records were negative for headaches. AR 261, 528, 634, 1048, 1065. There is no indication of any functional restrictions due to headaches.

Finally, Bigolin notes that she reported wrist pain in January 2013. AR 429. The ALJ reasonably concluded that the treatment records fail to support that this impairment has caused or can be expected to cause significant limitations for a period of 12 continuous months. AR 13-14. The physician's notes in March 2013 indicate that "I think her hand issues are cubital tunnel syndrome, but these aren't bothersome enough to warrant intervention." AR 267. On April 1, 2013, her wrist had improved. AR 289. In June 2013, her wrists had full range of motion without pain or tenderness. AR 363. One year later, in June 2014, Bigolin reported left wrist pain in the radial wrist. Her grip was weaker on the left and she was given a wrist brace. AR 998-99. At the next appointment, Bigolin had a normal nerve conduction study and no hand grip weakness. Her symptoms resembled DeQuervain's tenosynovitis and she was treated with a thumb brace and icing. AR 1017-18. There was no further mention of wrist pain in the treatment records, and as of the date of the ALJ's decision, this condition had not lasted 12 months.

### E. Listed Impairment 1.02

Bigolin argues, in conclusory fashion, that she meets or equals Listing 1.02 because she cannot ambulate effectively.

At step three of the sequential analysis, the claimant bears the burden of demonstrating that his impairments are equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5 (1987). "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step." *Id*. at 141; *see also Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

"The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citation omitted; emphasis in original). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530 (emphasis in original).

Listing 1.02 provides as follows:

> Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
> . . .
> B2b. What we mean by inability to ambulate effectively. Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held

> assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P., app. 1, § 1.02.

No physician has opined that Bigolin is unable to ambulate effectively with an assistive device that occupies one upper extremity such as one cane or one crutch. She has not shown that she meets or equals Listing 1.02, and has not shown that the ALJ erred in analyzing the evidence on her ability to ambulate effectively. AR 15-16.

**F.     Relief**

The decision whether to remand for further proceedings is within the discretion of the district court. *Treichler v. Comm'r*, 775 F.3d 1090, 1099 (9th Cir. 2014). When there are outstanding issues that must be resolved before a determination can be

made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1101. However, where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise discretion to direct an immediate award of benefits. *Id.*

Remand is appropriate because there are outstanding issues to be resolved before a determination can be made. As discussed above, it is unknown whether the representative jobs identified by the ALJ would still be available if it is determined Bigolin requires a sit/stand option and can perform less than occasional postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling.

## IV.
## ORDER

IT IS ORDERED that the decision of the Commissioner is reversed and remanded for reconsideration of whether Bigolin (1) requires a sit/stand option; and (2) is capable of performing occasional postural activities such as such as climbing, balancing, stooping, kneeling, crouching and crawling.

DATED: May 18, 2017

ALICIA G. ROSENBERG  
United States Magistrate Judge